Electronically Filed
10/27/2021 4:49 PM
Fourth Judicial District, Ada County
Phil McGrane, Clerk of the Court
By: Caterina Moritz Gutierrez, Deputy Clerk

Max T. Williams, ISB #11015
Jack N. Wagner, ISB #11244
WILLIAMS LAW GROUP, PLLC
202 N. 9th Street
Suite 204
Boise, ID 83702
Telephone: (208) 457-7284
Facsimile: (208) 261-4907
max@williamslawgroupboise.com
jack@williamslawgroupboise.com

*Attorneys for Plaintiff Jason Sonne*

# IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| JASON SONNE, <br><br> Plaintiff, <br><br> vs. <br><br> CARRINGTON COLLEGE, INC., an Idaho Corporation, <br><br> Defendant. | Case No. CV01-21-16825 <br><br> **PLAINTIFF'S VERIFIED COMPLAINT** |

COMES NOW, Plaintiff, Jason Sonne, (hereinafter "Plaintiff") by and through his attorney of record, Max T. Williams of Williams Law Group, PLLC, and for his Complaint against Defendant Carrington College, Inc. (hereinafter "Defendant" or "Carrington College"), for claims and causes of action of Constructive Discharge, Breach of contract, and others, and states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an Idaho individual who resides in Ada County, Idaho.

**PLAINTIFF'S VERIFIED COMPLAINT - 1**

2. Defendant is an Idaho Corporation, with its principal place of business located at 1122 North Liberty Street, Boise, Idaho 83704.

3. At all times relevant to this matter, the claims and/or causes of action occurred in Ada County, Idaho.

4. This Court has subject matter jurisdiction and personal jurisdiction over the Defendant pursuant to Idaho Code § 5-514.

5. Venue is proper in this Court pursuant to Idaho Code § 5-504.

6. The amount in controversy will exceed the jurisdictional amount of ten thousand dollars ($10,000.00).

## GENERAL ALLEGATIONS

7. Defendant was incorporated in the State of Idaho in 1984.

8. In 2019, Carrington was purchased by San Jose Valley College, Inc. (hereinafter "SJVC").

9. Carrington is a private, for-profit dental hygienist vocational college that provides in-person instruction and onsite training to dental hygienist students.

10. The average cost of tuition at Carrington is approximately $64,000.00 per year as of 2020-21. When Carrington College students graduate, they often find work as dental hygienists in the Treasure Valley.

11. Students are taught by trained and licensed dentists and dental hygienists. Carrington also provides free dental procedures to lower, socioeconomic groups of people, often minorities and citizens living below the poverty line.

12. These dental procedures are performed by Carrington students while supervised by Carrington College instructors.

**PLAINTIFF'S VERIFIED COMPLAINT - 2**

13. All dental education and procedures are governed by the Commission on Dental Accreditation (hereinafter "CODA") and approved by the American Dental Association (hereinafter "ADA").

14. Defendant's facilities safety procedures are governed by the Occupational Safety and Health Administration of the United States Department of Labor (hereinafter "OSHA").

15. Plaintiff began working for the Defendant Carrington in April 2015 as an instructor of dental hygiene.

16. Working as an instructor and for Carrington was intended to be Mr. Sonne's last job and he intended to retire from Carrington.

17. As part of the Carrington Student training program, students are taught local anesthesia techniques. Anesthetic cartridges are used by students to administer local anesthesia to patients prior and during dental procedures and should never have large bubbles in the cartridges as it is an indication of possible contamination or spoilation. The general medical practice, as well as advised by several manufacturers of Lidocaine anesthetic cartridges, is to discard said cartridges.

18. Treatment plans require the signature of the patient, student, and supervising instructor per Carrington policy. If no treatment plan is authorized, it is considered a critical error that puts patient, students, and faculty safety in question.

19. Plaintiff witnessed or was privy to at least two (2) instances of improper Lidocaine administration including:

   a. On or about November 12, 2019, Dr. Hunt, an onsite Carrington dental instructor, observed several Lidocaine anesthetic cartridges with large bubbles, indicating potential contamination. Dr. Hunt notified Rachel Watkins ("Watkins") and recommended to Watkins that the cartridges should be discarded. Watkins

**PLAINTIFF'S VERIFIED COMPLAINT - 3**

ignored Dr. Hunts medical recommendation. As a result, the cartridges were used on patients.

    b. Several weeks later, Watkins instructed Dr. Ryan, another onsite Carrington dental hygiene faculty member, to return potentially contaminated anesthetic cartridges into circulation. Watkins then instructed Dr. Ryan to have these potentially contaminated anesthetic cartridges administered on patients and to students who administered the anesthetic cartridges on each other as practice. Dr. Ryan said to the Plaintiff that he was extremely upset by Watkins' directive and stated he would refuse the order. Based upon the Plaintiff's belief, Dr. Ryan did not put the contaminated anesthetic cartridges into circulation. Had he done so, that would have been major violation of CODA, OSHA, and numerous health, medical, and safety laws.

20. Additionally, Plaintiff witnessed or was privy to the following:

    a. Watkins instructed faculty to have several students "clean a few teeth" prior to the board exams, also known as WREB clinical exams. A patient participated as a patient during a WREB clinical exam performed by three (3) Carrington students. The patient developed an infection following treatment in Carrington's clinic. No treatment plan was authorized, and no antibiotics were administered to the patient by the supervising dentist, as required.

    b. Watkins allowed the use of ultrasonic instrumentation on patients during a WREB clinical exam at the beginning of the COVID pandemic, and right after staff and students were allowed to return to in-person instruction at the Carrington campus. This occurred even though Watkins sent 3-4 emails to students stating they cannot

**PLAINTIFF'S VERIFIED COMPLAINT - 4**

use ultrasonic instrumentation during the height of the pandemic, as it would be a violation of Carrington COVID safety protocols as to aerosol production. But Watkins allowed students to use this equipment so that they would pass an upcoming WREB exam.

c. Watkins instructed staff and students to administer local anesthesia to a patient that was a known drug addict and had taken methamphetamine in the parking lot of Carrington that day. Watkins stated to the Plaintiff that she had "gotten in trouble" by management for her actions, but no apparent action or punishment was ever rendered.

d. On or about October 30, 2020, Watkins failed to notify staff, students, and patients of potential mold in a classroom adjacent to the public clinic and continued to keep the clinic open while the mold remediation was being performed by persons in hazmat suits, even though one instructor became sick and vomited and other students and faculty had developed headaches. Dr. Lewis recommended closing the afternoon clinic due to the noxious smells but was instructed by Watkins to keep the clinic open.

e. On October 31, 2020, the Plaintiff returned to school and smelled the noxious odors. The Plaintiff immediately contacted OSHA regarding the noxious fumes.

f. Failure by Carrington to address improper instruction regarding asepsis protocol in the clinic by Vicki VanHoogen (a close friend of Watkins).

g. Director Barry Brooks and Watkins instructed the Plaintiff and all staff to "just pass" a student, ▓▓▓▓▓▓▓▓ in spite of the fact that Lindsey exhibited uncontrollable shaking hands when administering local anesthesia and only Vicki VanHoogen and Wanda O'Harra were allowed to observe Lindsey's injections from that point on.

**PLAINTIFF'S VERIFIED COMPLAINT - 5**

    h. On at least one occasion, staff were instructed to keep quiet about possible COVID-19 exposure and not to be tested while Ms. Watkins took a leave due to COVID-19 exposure from her husband.

    i. Student to teacher ratio violated and continues to violate CODA-Dental Hygiene Accreditation Standards, Section 3-6, by having a 10 student to 1 teacher ratio.

    j. Use of contaminated, unsterile, and/or used instruments on a patient by a student and the program director, Watkins, instructed faculty member, Christy Corley, to tell the patient that the student "may have" used the unsterile instrument on the patient.

21. In August 2020, Plaintiff and several other staff members became concerned for the safety of the patients and the students, whose improper training put everyone at risk, and the persistent and intentional ignorance of Carrington Management to the ongoing health and safety issues occurring at their Boise campus.

22. In November 2020, the Plaintiff tested positive for COVID and believed he may have exposed numerous students to the virus. At that time, Carrington policy stated that all students exposed to COVID should quarantine for at least 14 days. Plaintiff notified Watkins of his positive COVID test and the exposure to students. Watkins asked the Plaintiff which students were exposed. Plaintiff named a few of the students. Watkins was more concerned about the exposed students taking their upcoming WREB exams. It is unknown if Watkins ever notified the students, however, Plaintiff contacted one of the students that he named to Watkins, and the student stated she never received any notice from Watkins or Carrington that the student had been exposed to COVID prior to the WREB exam. The student took the exam in the same room as several other exposed students, as well as putting patients' safety at risk of exposure.

**PLAINTIFF'S VERIFIED COMPLAINT - 6**

23. The Defendant, with notice and an opportunity to resolve the dangerous issues outlined above, failed to remediate, mitigate, or properly address any of those dangers. The Defendant continues to not address the dangerous and illegal conditions at its premise here in Idaho.

24. On December 30, 2020, Plaintiff emailed the owner (at the time) of Defendant, Mike Perry, regarding all the outstanding issues above in hopes that he would do something to stop the dangerous and illegal actions occurring on campus. Mike Perry contacted Carrington president, Mitch Charles, who then emailed Plaintiff and gave assurances that he would look into the situation and do something about it. Mr. Charles stated to Plaintiff, "thank you for continuing to bring these issues to light." However, nothing was ever done. A copy of the email exchange is attached hereto and referenced as **Exhibit "A"**.

25. On January 28, 2021, Plaintiff retained the legal representation of Williams Law Group, PLLC.

26. On February 26, 2021, Plaintiff sent his letter of resignation to Defendant and detailed the hostile work environment, improper training of students, being forced to allow Covid-exposed students to take board exams, and the lack of care provided by management as grounds for his resignation and his inability to continue to work for Defendant without any remedy to the severe problems with how the school was operated. A copy of the Resignation Letter is attached hereto and referenced as **Exhibit "B"**.

27. Plaintiff started applying to several dentist offices looking for dental hygienist work. Plaintiff was not invited for an interview for any of the 5 or 6 dental offices he applied to.

28. On April 20, 2021, Plaintiff's counsel emailed a demand letter to Defendant's counsel, Mr. John Ashby at Hawley Trauxell. A copy of the Demand Letter is attached hereto and referenced as **Exhibit "C"**.

**PLAINTIFF'S VERIFIED COMPLAINT - 7**

29. On April 20, 2021, Plaintiff's counsel had a telephone discussion with Defendant's counsel, John Ashby of the firm Hawley Trauxell, regarding settlement.

30. On or about April 2021, Mr. Ashby emailed Plaintiff's counsel rejecting settlement talks.

31. Around April 2021, Plaintiff found temporary part-time work as a dental hygienist with a dentistry practice in Meridian. Plaintiff is only filling in for a couple shifts per week and does not make enough money to support himself. Plaintiff did not work for several months during the summer and then has picked up temporary part-time work with the dentistry practice for the last month and still does not make enough money to cover his monthly expenses. Plaintiff has been forced to use his savings to cover his expenses since he was constructively discharged.

32. Since June 2021, Plaintiff was finally able to find employment with a real estate company as a real estate agent. Plaintiff works there full-time.

33. Plaintiff has been unable to find work as a full-time dental hygienist or dental hygiene instructor.

34. On August 16, 2021, CODA sent a letter to the Plaintiff stating that CODA had begun an investigation of the Defendant for potential non-compliance of Standards 2-5 (regarding admissions) and 3-6 (regarding teacher:student ratio). A copy of the CODA Investigation Letter is attached hereto and referenced as **Exhibit "D"**.

35. Due to the Defendant's refusal to remediate the outstanding dangerous and illegal conditions, the Plaintiff was forced to file the present Complaint.

36. Wherefore, the Plaintiff alleges the following claims against the Defendant:

## COUNT I
## Constructive Discharge in Violation of Public Policy for Failing to Maintain Safe Work Environment

**PLAINTIFF'S VERIFIED COMPLAINT - 8**

37. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

38. Plaintiff was employed by Defendant; and

39. Plaintiff was subjected to working conditions that violated public policy, in that [e.g., Plaintiff was required to work in unsafe or unhealthful conditions without appropriate protective equipment]; and

40. Defendant intentionally created or knowingly permitted these working conditions; and

41. These working conditions were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign; and

42. Plaintiff resigned because of these working conditions; and

43. The working conditions were a substantial factor in causing Plaintiff's harm; and

44. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

## COUNT II
### Breach of the Covenant of Good Faith and Fair Dealing

45. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

46. Plaintiff reasonably and appropriately acted in good faith by notifying Carrington management of the public health and safety risks regarding the dental hygiene training of Carrington students, exposure of Carrington staff and students to Covid, exposure of Carrington staff to liability and revocation of licensure, and placement of patients in immediate and irreparable harm by administering anesthesia and other medicines to known drug users and without proper care and precautions when carrying out these duties; and

**PLAINTIFF'S VERIFIED COMPLAINT - 9**

47. The Defendant failed to provide a safe work environment; and

48. The Defendant's actions violate, nullify, and significantly impaired any benefit or right of Plaintiff's employment; and

49. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

## COUNT III
### Unjust Enrichment

50. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

51. Plaintiff provided a benefit to the Defendant by providing high-quality academic instruction in the field of dental hygiene for several years; and

52. Defendant accepted and appreciated the benefit of having a trained, skilled, and educated instructor of dental hygiene throughout the Defendant's Treasure Valley facilities; and

53. Defendant was unjustly enriched by the skill, labor, knowledge, and experience of the Plaintiff by perpetuating, promoting, affirming, sanctioning, and allowing a hostile work environment that encouraged improper dental training, putting Plaintiff's and other staff members' licensure at risk, placing patient lives at risk of death or great bodily injury, and failing to stop the nepotism that occurred with the hiring and promotion of unqualified staff that is related to, or close friends with, the Defendant's management; and

54. Under the circumstances, it would be unjust for the Defendant to retain the benefit of the instruction, provided by the Plaintiff, without compensating the Plaintiff for its value.

## COUNT IV
### Negligent Infliction of Emotional Distress

**PLAINTIFF'S VERIFIED COMPLAINT** - 10

55. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

56. The Defendant had a duty by law to protect its students and staff from unsafe working conditions and the performance of illegal acts; and

57. The Defendant breached of that duty; and

58. There is a causal connection between the Defendant's conduct and the Plaintiff's injury;

59. The Plaintiff has suffered actual loss or damage; and

60. The Plaintiff has a demonstrable physical manifestation of his emotional injury.

## COUNT V
### Vicarious Liability (Respondent Superior)

61. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

62. The Plaintiff engaged in work assigned to him by the Defendant; and

63. The Plaintiff was serving at the behest of his "master", i.e. the Defendant; and

64. The Defendant ordered Plaintiff to engage in illegal acts to which Plaintiff would not have otherwise performed had it not been demanded by his "master"; and

65. The acts to which the Defendant ordered Plaintiff to engage in were so closely connected to the duties and obligations of Plaintiff, that were fairly and reasonably incidental to Plaintiff's duties, that they may be regarded as methods, even though improper, of carrying out the objective employment; and

66. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

## COUNT VI

PLAINTIFF'S VERIFIED COMPLAINT - 11

## Negligent Supervision

67. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

68. The Defendant was negligent in failing to exercise due care to protect third parties from foreseeable tortious acts of its management and employee; and

69. Defendant's negligent supervision encompasses conduct of its management that is outside the scope of employment because the tortious conduct occurred on the Defendant's premises; and

70. The Defendant's duty of care required that if it knows of an employee's dangerous propensities the Defendant must control the employee so he or she will not injure third parties; and

71. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been damaged in the amount of, or exceeding $10,000.00, or an amount that will be proved through discovery and at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jason Sonne prays that the Court enter as follows:

1. Judgment against Defendant in an amount to be proven at trial; and

2. Award to Plaintiff her respective costs and attorneys' fees and costs pursuant to I.R.C.P. 54(e), and Idaho Code Sections 12-121 and 12-123, and all other applicable grounds for attorneys' fees and costs afforded by law and such other relief as it deems just and proper, and in the event of default judgment, reasonable attorneys' fees, and costs of $8,000.00.

3. For pre-judgment and post-judgment interest at the highest rate permitted by law; and

4. For such other and further relief as the Court deems just and equitable.

PLAINTIFF'S VERIFIED COMPLAINT - 12

DATED this 27th day of October 2021.

WILLIAMS LAW GROUP, PLLC

/s/ Max T. Williams

Max T. Williams
*Attorney for Plaintiff Jason Sonne*

I certify under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct.

Jason Sonne

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October 2021, the foregoing **PLAINTIFF'S VERIFIED COMPLAINT** was served upon the following parties by the method(s) indicated below:

John Ashby
Hawley Trauxell
877 W. Main St., Ste. 1000
Boise, Idaho 83702
Tel: (208) 344-6000
E-Mail: jashby@hawleytrauxell.com

☐ Hand Delivery
☐ U.S. Mail, postage prepaid
☐ Facsimile:
☒ E-mail
☐ I-Court ECF

/s/ Courtney Cook
Legal Assistant

PLAINTIFF'S VERIFIED COMPLAINT - 13

PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446(d), the filing of the Notice of Removal, together with the filing of this notice with this Court and the service of the Notice of Removal and this notice on the other parties, effects the removal of this action to federal court, and this Court may proceed no further with this action unless and until this action is remanded.

DATED THIS 16th day of February, 2022.

                HAWLEY TROXELL ENNIS & HAWLEY LLP


By /s/ D. John Ahsby
    D. John Ashby, ISB No. 7228
    Attorneys for Defendant San Joaquin Valley
    College, Inc.

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 16th day of February, 2022, I caused to be served a true copy of the foregoing NOTICE OF NOTICE OF REMOVAL by the method indicated below, and addressed to each of the following:

| | |
|---|---|
| Max T. Williams<br>Jack N. Wagner<br>WILLIAMS LAW GROUP, PLLC<br>202 N. 9th Street, Suite 204<br>Boise, ID  83702 | ☐ U.S. Mail, Postage Prepaid<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ E-mail<br>max@williamslawgroupboise.com<br>jack@williamslawgroupboise.com<br>☐ Facsimile:  208.261.4907<br>☒ iCourt |

*/s/ D. John Ashby*
D. John Ashby, ISB No. 7228
Taylor J Barton, ISB No. 11259

NOTICE OF NOTICE OF REMOVAL - 3

46019.0009.14507143.1